WASHINGTON et al. v. GILES. (No. 8429.)*

(Court of Civil Appeals of Texas. Galveston. Jan. 17, 1924. 'Rehearing Denied Feb. 7, 1924.)

1. Taxation ⊖⇒650—Homestead liable for interest and attorney's fees in tax foreclosure proceeedings.

That a judgment in a sale of a homestead for taxes included interest on the judgment from its date and costs taxed as attorney's fees fixed by the statute did not render such sale void under Const. art. 16, § 50, providing that a forced sale of the homestead shall not be had "except for the purchase money thereof, * * * the taxes due thereon," and for the cost of improvements, especially in view of article 8, § 15, providing that all property shall be liable for the payment of "all the taxes and penalties" due thereon.

2. Taxation ⊖⇒648—Tax sale judgment held good against owners' collateral attack on ground that land was a homestead.

In trespass to try title by purchaser for possession of lands sold to him under judgment and order of sale for taxes, such judgment could not be attacked collaterally by the owners who were parties to the tax foreclosure proceedings on the ground that the land was their homestead, and that the judgment included interest and attorney's fees, contrary to Const. art. 16, § 50; no such defense having been raised in the foreclosure proceedings, and the record in that proceeding not showing that the land was a homestead.

3. Taxation ⊖⇒648—Tax judgments entitled to same consideration as other judgments.

Judgments rendered in tax foreclosure suits are entitled to the same consideration that is given to judgments rendered in actions generally between individuals.

4. Taxation ⊖⇒810(1)—Burden on owners, seeking to recover land sold for taxes, to show compliance with redemption statute.

The burden is on the owners, denying the title of purchaser under a judgment and order of sale for property for taxes, to show payment or tender of redemption money to purchaser or to the tax collector within the time allowed by Vernon's Sayles' Ann. Civ. St. 1914, art. 7641, before they can successfully assert title to the property thus sold.

Error from District Court, Harris County; J. D. Harvey, Judge.

Suit of trespass to try title by William Giles against Ben P. Washington and another. Judgment for plaintiff. Defendants bring error. Affirmed.

R. W. Greene and Pritchett Harvey, both of Houston, for plaintiffs in error.

Campbell & Nicholson and Amerman & Sears, all of Houston, for defendant in error.

LANE, J. This is a suit of trespass to try title and for possession of lots 5 and 7 and the adjoining halves of lots 8 and 12 in block 471 in the city of Houston, brought by William Giles against Ben P. Washington and his wife, Ella L. Washington.

Defendants answered by a plea of not guilty and by a plea setting up the statute of limitation of 10 years as a bar to the suit, and a plea in which they alleged, substantially, that the lots were their homestead; that appellee, claiming he owned notes made by them for sums aggregating $2,000, secured by a mortgage lien on the lots, repeatedly threatened to have them put off same, and in April, 1917, commenced a suit against them in a district court of Harris county, alleging that he was the owner of the lots; that the notes were "without consideration, being for a pretended indebtedness against their homestead"; that they (appellants), "through their ignorance of law," nevertheless "thought they were obliged to pay the notes" or lose their homestead; that they therefore agreed with appellee that if he would destroy the notes, dismiss said suit, and "give them a warranty deed to the lots," they would pay him $75 in cash and make and deliver to him their promissory note for .$3,229 payable in monthly installments of $35 each; that they paid appellee $75, and afterwards made him the note for $3,229, as they agreed they would, and that appellee made and delivered a deed conveying the lots to them; that on or about June 1, 1917 (when same became due), they offered to pay appellee the first installment of $35; that he refused same, claiming they owed him $200; that a few days later they offered to pay him the $200 he demanded, but he refused to receive it, claiming they owed him $1,000; that appellee never at any time had title to the lots; and that his suing them,

═════════════

as stated, and "all of his acts, were done with the express purpose to unlawfully cheat, swindle, and defraud them out of their homestead."

It was shown that in a suit brought by the state of Texas against Ben P. and Ella Washington to recover taxes due the state of Texas upon the lots involved in this suit for the years 1909 to 1912, inclusive, that Washington and wife, though duly served with citation, made default, and that on the 5th day of November, 1914, judgment was rendered in said suit for the state of Texas against Washington and wife for the sum of $80.80, with the 6 per cent. per annum interest thereon from date of judgment, and for costs of suit, as provided by the statutes in suits for delinquent taxes, including $3 as compensation allowed by law to the plaintiff's attorney, and for a foreclosure of the tax lien upon said property; that thereafter, to wit, on the 23d day of March, 1915, an execution and order of sale was issued upon said judgment and placed in the hands of the sheriff of Harris county, and that said sheriff, on the 1st day of April, 1915, executed said writs in manner and form as required by law, by levying upon and seizing said property, and that thereafter in manner and form as required by law advertised the same for sale, and thereafter, on the 4th day of May, it being the first Tuesday in said month, sold the same to William Giles, the plaintiff in the present suit, for $113.45, he having bid said sum for said property at said sale and his bid being the highest and best bid made therefor. Thereafter, on the same day, the said William Giles paid the sum so bid, and on said 4th day of May, 1915, said sheriff executed and delivered to said Giles a deed conveying to him said property.

It was shown that from the proceeds of the sale of said property the sheriff paid: (1) The sum of $83.22, same being the amount of the tax judgment, including $2.42 interest thereon from date of judgment to date of sale; (2) $3 attorney's fees, taxed as costs under the provision of the law; (3) district clerk's fees, taxed as costs, $3; (4) county clerk's fees, taxed as costs, $4; (5) advertising, 50 cents; (6) tax collector's fees, $4; (7) sheriff's fees, $1.50, for serving process in suit; (8) sheriff's fees for executing the writs by advertising sale, making sale, making deed, etc., $15.72—a total of $113.45.

That on the 2d day of September, 1919, Ben P. Washington and wife executed and delivered to one N. T. Masterson a deed, by which they conveyed to him the property involved in this suit, for a recited consideration of "ten dollars and other valuable considerations"; that thereafter, on the 10th day of September, 1912, N. T. Masterson sold said property to the Texas Town Lot & Improvement Company, a corporation.

That in a suit brought by the city of Houston against Texas Town Lot & Improvement Company to recover taxes due upon said property to the city of Houston, said company, though duly served with citation, made default, and that on the 16th day of October, 1913, judgment was rendered in said cause for the city of Houston against said company for the sum of $111.45, with interest thereon from date of judgment, for costs of advertising taxes, making tax statements of said delinquent taxes, and for such costs incurred as is provided by law, and for a foreclosure of said city's tax lien on said property.

Thereafter, upon the proper issuance of execution and order of sale, the sheriff of Harris county levied upon and seized said property, and after giving legal notice of the proposed sale sold the same to the city of Houston on its bid of $134.50, said sum being the highest and best bid made therefor, and thereafter the proceeds of such sale were paid out by him as directed in said execution and order of sale, and said sheriff executed and delivered to said city a deed conveying to it said property.

Thereafter, to wit, on the 8th day of August, 1916, the city of Houston, by its deed of that date, conveyed said property to William Giles.

That in a suit brought by the city of Houston against Ben P. Washington and wife, Ella L. Washington, William Giles, and N. T. Masterson, trustee, to recover taxes for the year 1913, due the city upon the property involved in this suit, all of said parties, though duly served with citation, appeared not, but wholly made default, and that on the 10th day of April, 1915, judgment was rendered in said cause for the city against all of said parties for the sum of $64.90 due said city for taxes upon said property for 1913, with interest thereon from date of judgment, for costs of suit, together with costs of advertising the taxes due and making tax statements of said delinquent taxes for $3.24 costs as attorney's fee, and for a foreclosure of the city's tax lien on said property. That thereafter, upon the proper issuance of execution and order of sale, the sheriff of Harris county levied upon and seized said property and, after giving legal notice of the proposed sale, sold the property to appellee William Giles, upon his bid of $94.46, said bid being the highest and best bid made therefor, and thereafter the said Giles paid to said sheriff the sum so bid by him, and thereafter the proceeds of said sale were paid out by the sheriff as directed in and by said execution and order of sale; and thereafter the sheriff did execute and deliver to the said William Giles a deed conveying to him said property.

To rebut the foregoing showing made by the plaintiff Giles, the defendants offered only the testimony of Ben P. Washington, who testified as follows:

"My name is Ben P. Washington. My wife and myself are defendants in this case. I am acquainted with the property sued for, and claim to own it. I have owned it about 22 years. I went on there in 1900 and built the fence and had it surveyed and commenced filling it up. In 1901 I had a house moved up there. The old lady down there now, she is living in the house at the time, and I asked her to get out of the house. I had bought the house, and had the house moved up there, and then I built a barn 40 feet long and 16 feet wide, and I dug a well on it, and I have been filling it for the last 15 or 20 years. I have been actually living on it 21 years. I claimed it as mine. When I went there I asked for it, asked for the property when I was fixing to get married, for a home.

"The deed from Ben P. Washington and wife to N. T. Masterson, introduced in evidence, was signed by me and my wife.

"Since I have been in possession of said premises sued for, no one has ever demanded any rent of me.

"I went up to see Mr. Giles two or three times and couldn't get no understanding as to any amounts due upon this land. I carried him money several times to pay him, and he wouldn't take it, and one time the stenographer carried me up to Mr. Campbell's office with $75, and I carried it up there, and they wanted me to sign some little note, and I wouldn't sign it. I gave them the $75, and when I carried another paper down to my lawyer they had a case pending in the Fifty-Fifth or Sixty-First district court, and the sheriff come out and asked me to move, so I didn't move, and he came back and said I had better be gone in three days, and he come back in three days, and I was still there, and he says, 'You have got a lot of plain sense,' and he says, 'Come on and let me go to town with you and let me show you where to get a lawyer,' says, 'that fellow is trying to defraud you out of that place.'

"Mr. Giles never would tell me how much the taxes were until I went up there two or three times to pay them, and Mr. Sweeney tried to make him let me pay them. I had the money to pay for them. He wouldn't talk with me about them. I was talking to Mr. Giles. He asked me whether I was a d—— fool.

"Mr. Giles, plaintiff, never offered to have a settlement with me as to the amount that I was due upon these premises. I went to him with the money to have a settlement, and sent my wife and my sister-in-law, and he wouldn't accept it. This is a homestead. I did not claim to own any other homestead except that. That paper introduced in evidence to N. T. Masterson is the only paper I ever made to Mr. Masterson.

"Mr. Giles filed a suit against me along about April 4, 1917, in the Fifty-Fifth district court. I never did have an agreement with Mr. Giles, the plaintiff, after that suit was filed in the Fifty-Fifth district court of Harris county, regarding my affairs in this case with reference to that suit. Mr. Giles and myself never did have an agreement before or after the bringing of that suit in the Fifty-Fifth district court of Harris county, as to the settlement of my affairs."

Upon the pleadings and evidence as shown above, the court instructed the jury selected to try the cause to return a verdict for the plaintiff, which was accordingly so returned, and judgment was thereupon rendered for the plaintiff. Washington and wife have appealed.

[1] It is apparent that the plaintiff Giles is asserting title to the property under the sales made by virtue of the orders of sale issued upon the judgments rendered in the three tax suits hereinbefore mentioned, to wit, The State of Texas v. Ben P. Washington and Wife. The City of Houston v. The Texas Town Lot Improvement Company, and The City of Houston v. Ben P. Washington et al. Appellants Washington and wife contend that the sales made by virtue of the orders of sale issued upon said judgments are void, in that the court included in said judgment $3 for attorney's fee and 6 per cent. interest upon the amount of taxes due. They base such contention upon the further contention that the property involved is shown in the present suit to have, been their homestead at the time said judgments were rendered and sales made thereunder, and that, by reason of the inhibition of our state Constitution, the homestead cannot be sold to satisfy attorney's fees and interest upon delinquent taxes, included in the judgments foreclosing the tax lien against said homestead, said sales are void, and that the deeds of the officer making such sales are also void.

The contentions of appellants cannot be sustained. The judgments rendered in the tax suits of the State v. Washington and Wife, and City of Houston v. Washington et al., and the sales made thereunder, are not void; therefore no judgment other than the one rendered could have been legally rendered, unless it be shown that appellants redeemed the property under the provisions of article 7641, Vernon's Sayles' Statutes of 1914, and in such circumstances the other questions raised by appellants' assignments and propositions, other than the one relative to the question of redemption, becomes immaterial.

Since the sales above mentioned are valid, the deed of the officer making such sale conveyed the title to the property in question to the purchaser, and as appellee holds under said deeds he is the holder of the legal and equitable title of said property, unless it be shown that appellants had redeemed same under the provisions of article 7641.

[2, 3] Ben P. Washington and wife were both parties defendants in the tax suits of the State of Texas v. Washington and Wife and City of Houston v. Washington and Wife et al., and were served with proper process. So far as the record before us discloses, there was nothing in those suits to show that the property was the homestead of Washing-

ton and wife. If, therefore, it be conceded that Washington and wife could by proper plea of homestead in those suits have defeated a recovery for interest on the judgments and the $3 attorney's fee taxed as costs, they could not now attack said judgments collaterally as they are attempting to do here; but no such concession is made. That a judgment for such interest and costs is authorized by the statutes is conceded by appellants, and it is only contended by them that section 50 of article 16, and section 15 of article 8, of our state Constitution, forbids the forced sale of the homestead except for the payment of the purchase money thereof, the taxes and penalties due thereon, or for work and material used in constructing improvements thereon, and that as interest on the judgment from its date, and the costs taxed as attorney's fees fixed by the statutes, are not embraced in the exceptions named, a sale made of the homestead in a tax suit to pay such sums is void.

By section 15 of article 8 of the Constitution it is provided:

"The annual assessment made upon landed property shall be a special lien thereon, and all property, both real and personal, belonging to any delinquent taxpayer shall be liable to seizure and sale for the payment of all the taxes and penalties due by such delinquent; and such property may be sold for the payment of the taxes * * * due by such delinquent, under such regulations as the Legislature may provide."

It is disclosed by the judgments that the recovery was for taxes due the state for the several years mentioned, and the only interest provided for is 6 per cent. on the amount of the judgments. The costs taxed in said tax suits are such only as are provided by law.

That the homestead may be sold to pay the taxes due thereon and for the penalties provided by law for nonpayment when due, there can be no doubt. Both the Constitution and the statute law provide that such sale may be made. Judgments rendered in courts of competent jurisdiction for the seizure and sale of the homestead for the payment of such taxes and penalties are not rendered void because they are for a larger amount than the taxes due thereon. While such judgments may, in proper manner, be modified or set aside on appeal, they cannot be attacked collaterally as is attempted in this case. The judgments rendered in the two tax suits, State v. Washington and Wife and City of Houston v. Washington et al., are entitled to the same consideration that is given to judgments rendered in actions generally between individuals. The attack sought to be made upon these two judgments, by showing that they were rendered for amounts not properly recoverable as taxes and liens against the homestead, would not

be permitted in a case where Washington and wife had been sued upon an ordinary debt, with the foreclosure of a lien upon their property and judgment thereon rendered against it. The absolute verity in favor of the judgment in a case of that character should be given to the judgment rendered in the tax suits mentioned. The same principle that applies to the one would apply to the other. Such is the holding in the cases of Bean v. City of Brownwood (Tex. Civ. App.) 43 S. W. 1036, City of San Antonio v. Berry, 92 Tex. 319, 48 S. W. 496, and (Tex. Civ. App.) 46 S. W. 273, and Brown v. Bonougli, 111 Tex. 275, 232 S. W. 490.

In Bean v. City of Brownwood and City of San Antonio v. Berry, it is also held that costs incurred in enforcing the tax lien against a homestead for the payment of the taxes due thereon may be charged against the same; that such costs are an incident to the debt and become a part of it, and are to be paid out of the proceeds realized from a sale of said homestead.

Under both the rules announced by the authorities cited, the judgment rendered in the two cases (State of Texas v. Washington and Wife, and City of Houston v. Washington and Wife et al.), and the sales made thereunder, are not void, but are valid and cannot be attacked collaterally, as is attempted in the present suit by Washington and wife.

[4] Having reached the conclusion above expressed, the only remaining question for our decision is: Was the property redeemed by Washington and wife under the provisions of article 7641 of Vernon's Sayles' Statutes of 1914, by payment or tender of the redemption money within two years from the date of the sales to appellee Giles, or to the tax collector?

By the article mentioned, it is provided that if the landowner, whose land has been sold for taxes, and the purchaser at the tax sale, cannot agree on the amount of redemption money, said owner may redeem by payment to the tax collector. It therefore devolves upon appellants to affirmatively show that they paid or tendered the redemption money to appellee or to the tax collector, within the time allowed for redemption, before they can successfully assert title to the property under the redemption statute. Have they made such showing?

There is no evidence showing payment of the redemption money at all, and the only testimony tending to show that such money was tendered was the testimony of Ben Washington. His testimony with reference to his efforts to redeem the property is as follows:

"Mr. Giles never would tell me how much the taxes were until I went up there two or three times to pay them, and Mr. Sweeney tried to make him let me pay them. I had the money

to pay for them. He wouldn't talk with me about them. I was talking to Mr. Giles. He asked me whether I was a d—— fool.

"Mr. Giles, plaintiff, never offered to have a settlement with me as to the amount that I was due upon these premises. I went to him with the money to have a settlement, and sent my wife and my sister-in-law, and he wouldn't accept it."

It is apparent that the testimony falls far short of showing that the tender was made, or, if made, that it was made within the two years from the date of the sheriff's deed to appellee Giles. It does show that appellants had not been able to reach an agreement with appellee as to the amount of the redemption money, but it fails to show that any effort was made to pay said redemption money to the collector of taxes at any time. It is clear, therefore, that there is no proof to show that appellants are entitled to the title and possession of the property under the redemption statutes.

It follows from what has been said that we think the judgment should be affirmed, and it is so ordered.

Affirmed.