Opinion issued March 24, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00585-CV

———————————

Jose Pedro Gonzalez
and Esperanza Gonzalez, Appellants

V.

Shahrokh Razi, Appellee



 



 

On
Appeal from the County Civil Court at Law No. 1

Harris
County, Texas



Trial Court Case No. 924634

 



 

O P I
N I O N

Appellants, Jose Pedro Gonzalez and Esperanza Gonzalez,
appeal the trial court’s rendition of a declaratory judgment that determined
the Gonzalezes did not properly exercise their right to redeem property that
had been sold at a tax foreclosure sale. 
In two issues, the Gonzalezes argue that the trial court erred in
finding that the property was not their homestead and that they had not
properly exercised their rights to redeem the property.

We reverse and remand.

                                                                                                                                                                
Background

The Gonzalezes owned certain property that was foreclosed
upon on May 1, 2007, due to outstanding taxes owed.  The property was purchased by appellee,
Shahrokh Razi.  Razi recorded the sale in
the county records on July 13, 2007.

Claiming the residence was their homestead, the Gonzalezes
attempted to redeem their property.  The
Gonzalezes sent a letter to Razi at the address listed on the deed requesting
an itemization of costs incurred by Razi. 
The address on the deed, however, was incorrect, and Razi never received
the letter.

The Gonzalezes subsequently submitted affidavits to the
county tax assessor-collector representing that they had made a diligent search
for Razi in the county in which the property was located; that Razi was not
believed to be a resident of the county; that they attempted to contact Razi
multiple times to no avail; and that Razi, by avoiding contact with them,
refused to give them a quitclaim deed to the property.  They also delivered $16,757.29 to the county
tax assessor-collector as the amount believed to be owed for redemption of the
property.  The county tax
assessor-collector gave a receipt for redemption to the Gonzalezes.

One month later, Razi filed suit against the Gonzalezes
seeking a declaratory judgment that the property was not their homestead and
that they had not properly exercised their right to redeem the property.  The Gonzalezes answered with a general
denial.

The Gonzalezes testified at trial that they had owned the
property since 1993.  Jose Gonzalez
testified that they had live there since 1993, while Esperanza Gonzalez
testified that they had a water well and septic tank installed in 1994 and they
moved onto the property in 1995.  The
Gonzalezes both testified that they lived on the property continuously since
1993 or 1995 and that the property was their primary residence.  Esperanza Gonzalez testified that their
younger children attended school in the area and the address for the property was
the address registered with the school.

Razi testified that the property was not listed as a
homestead in the notice he received of the foreclosure sale.  He visited the property once before the
foreclosure sale and “[m]ore than five, six times” after the foreclosure sale.  Razi never saw the Gonzalezes on the property
during his visits.[1]

There was a man, identified only as Mr. Hernandez, living
on the property in a trailer at the time of foreclosure.  Razi testified that Hernandez told him that
he ran an automobile repair shop on part of the property and that no one else
was living there other than him and his wife.

Razi also testified that the residence was uninhabitable
at the time of his visits.  Razi
testified that he never actually entered the residence.  He tried to look in the windows but could not
see very much.  From his observations on
the outside, Razi noted that the residence was “run down,” the roof was leaking
in places, and the outside stairs leading to the second story were not safe to
climb.

                                                                                                                                       
Burden of Proof at Trial

We must first determine who had the burden of proof at
trial, an issue disputed by the parties in their briefs.  Razi initiated suit, bringing an action for
declaratory judgment.  The party who
brings an action for declaratory judgment is not necessarily the party that
carries the burden of proof at trial, however. 
Pace Corp. v. Jackson, 284
S.W.2d 340, 350 (Tex. 1955); Lede v.
Aycock, 630 S.W.2d 669, 673 (Tex. App.—Houston [14th Dist.] 1981, writ ref’d
n.r.e.).  Instead,

[i]n the usual and ordinary case the burden of proof is
not imposed on the plaintiff merely because he files his petition first but
because he asks for action on his behalf from the court, either preventive or
in the nature of redress. The other party is usually content with the status
quo. Both logic and fairness demand that the plaintiff shoulder the
responsibility of convincing the court that action should be taken.

Pace Corp.,
284 S.W.2d at 350; see also Lede, 630
S.W.2d at 673 (holding burden of proof in action for declaratory judgment is
upon party who, in absence of evidence, will be defeated).

The parties’ dispute concerns the application of section
34.21 of the Texas Tax Code as it applied when the Gonzalezes took steps to
redeem their property.[2]  See
Act of May 27, 2003, 78th Leg., R.S., ch. 510, 2003 Tex. Gen. Laws 1778
(amended 2009) (current version at Tex.
Tax Code Ann. § 34.21 (Vernon Supp. 2010)).  Section 34.21 provides the mechanism by which
a person whose property has been sold at a tax sale may redeem the property.  The issue we must resolve is the position of the
parties relative to the property when the suit was commenced.  If an act of redemption under the section is
presumptively effective, then the Gonzalezes held legal title to the property
and Razi bore the burden of proof to obtain affirmative relief in undoing the
redemption.  See Pace Corp., 284 S.W.2d at 350. 
If, instead, an act of redemption under the section is not presumptively
effective, then title remained with Razi and the Gonzalezes bore the burden of
proof to obtain affirmative relief in effectuating the redemption.  See id.  

In Washington,
we held that it was the original owners’ burden “to affirmatively show that
they paid or tendered the redemption money to [the tax-sale purchaser] or to
the tax collector within the time allowed for redemption.”  Washington
v. Giles, 258 S.W. 900, 903 (Tex. Civ. App.—Galveston 1924, writ dism’d
w.o.j.).  In that case, however, the
Washingtons never asserted, at trial or on appeal, that they had attempted to
redeem the property or that the redemption statute applied to them.  Id.
at 900.  Instead, the Washingtons were
seeking only to collaterally attack the judgments and sales as void.  Id.
at 903.  Any analysis of the applicable
redemption statute, then, was only dicta. 
See Travelers Indem. Co. of Ill.
v. Fuller, 892 S.W.2d 848, 851 n.3 (Tex. 1995) (holding dicta is “a mere
expression of opinion on a point or issue not necessarily involved in the cases
which does not create binding precedent under stare decisis”).

A reading of section 34.21 shows that an act of redemption
by the original owner of the property is presumptively effective and whatever
title was held at the time prior to redemption automatically reverts to the
original owner.  As an initial matter, we
note that it has been the practice in Texas since at least 1909 to liberally
construe redemption statutes in favor of redemption.  Jackson
v. Maddox, 53 Tex. Civ. App.  478,
480, 117 S.W. 185, 185 (Fort Worth 1909, no writ); Rogers v. Yarborough, 923 S.W.2d 667, 669 (Tex. App.—Tyler 1996, no
writ).  

Subsections (a) through (c) of section 34.21 provide the
general requirements for the owner of a residential homestead, agricultural
property, or a mineral interest in property to redeem the property when the
property has been purchased by a taxing unit or third party.  Tex.
Tax Code Ann. § 34.21(a)–(c). 
They only require payment of the amount owed, as defined by the
subsections, within a given time period. 
Id.  The subsections do not require any further
action by the original owner to effectuate the redemption.  Furthermore, upon written request from the
owner, the purchaser bears the responsibility of providing an itemized list of
all reimbursable costs incurred by the purchaser.  Id.
§ 34.21(i).

Prior subsection (f) provides that, if the original owner
presents an affidavit to the county assessor-collector representing that the
owner has made a diligent search in the county in which the property is located
for the purchaser and either (1) has failed to find the purchaser; (2) the
purchaser is not a resident of the county in which the property is located; (3)
the owner and purchaser cannot agree on the amount due for redemption; or (4)
the purchaser refuses to give the owner a quitclaim deed to the property, then
the owner may redeem the property by paying the “required amount” to the county
assessor-collector.  Act of May 27, 2003,
78th Leg., R.S., ch. 510, 2003 Tex. Gen. Laws 1778 (amended 2009).  Upon presentation of the affidavit and the
amount of money, the assessor-collector is required to give the owner a signed
receipt witnessed by two persons.  Id. 
Recording the receipt in the county records “is notice to all persons
that the property described has been redeemed.” 
Id.  

All of the acts in prior subsection (f) are
automatic.  The assessor-collector is not
required to verify any of the representations by the original owner, including
whether the property was redeemed within the proper time period or whether the
amount tendered is the appropriate amount. 
Similarly, the act of recording the receipt only acts as notice that the
property has been redeemed; it does not constitute the trigger for
redemption.  Id.  Accordingly, the trigger
for redemption must occur at some prior point. 
The only other trigger would be the tender of the affidavit and any
money owed or the issuance of the receipt, which is automatic after the owner
submits the affidavit and payment.

Based on the language of section 34.21, an act of
redemption under the section is presumptively effective.  Title to the property reverted to the Gonzalezes
prior to trial, and Razi, by filing his action for declaratory judgment, was
seeking affirmative relief.  Accordingly,
we hold that Razi bore the burden of proof at trial to overcome the presumption
that the redemption was effective.  See Pace Corp., 284 S.W.2d at 350
(holding that party seeking affirmative relief bears burden of proof).

                                                                                                                                   
Sufficiency of the Evidence

In their first issue, the Gonzalezes argue that the
evidence is legally and factually insufficient to support the trial court’s
finding that the property was not their residence homestead.  In their second issue, the Gonzalezes argue
that the evidence is legally and factually insufficient to support the trial
court’s finding that the Gonzalezes did not substantially comply with section 34.21.

A.              
Standard of Review

“The final test for legal sufficiency must always be
whether the evidence at trial would enable reasonable and fair-minded people to
reach the verdict under review.”  City of Keller v. Wilson, 168 S.W.3d
802, 827 (Tex. 2005).  “[L]egal-sufficiency
review in the proper light must credit favorable evidence if reasonable [fact
finders] could, and disregard contrary evidence unless reasonable [fact
finders] could not.”  Id.  “If the evidence . . . would enable
reasonable and fair-minded people to differ in their conclusions, then [fact
finders] must be allowed to do so.”  Id. at 822.  “A reviewing court cannot substitute its
judgment for that of the trier-of-fact, so long as the evidence falls within
this zone of reasonable disagreement.”  Id.  Although the reviewing court must consider
evidence in the light most favorable to the verdict, and indulge every
reasonable inference that would support it, if the evidence allows only one
inference, neither fact finder nor the reviewing court may disregard it.  Id.  

To determine whether the evidence is factually sufficient
to support a finding, an appellate court considers and weighs all evidence that
was before the trial court.  Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986).
 When an appellant attacks the factual
sufficiency of an adverse finding on an issue on which he did not have the
burden of proof, the appellant must demonstrate the finding is so contrary to
the overwhelming weight of the evidence as to be clearly wrong and manifestly
unjust.  See id.  As the reviewing
court, we may not act as fact finder and may not pass judgment on the
credibility of witnesses or substitute our judgment for that of the trier of
fact.  Golden Eagle Archery, Inc. v. Jackson, 116 S.W.3d 757, 761 (Tex. 2003).
 

B.              
Residence Homestead

In their first issue, the Gonzalezes challenge the legal
and factual sufficiency of the trial court’s determination that the property
was not their residence homestead.

Under section 34.21, if the property was their residence homestead,
then the Gonzalezes had two years to redeem the property from the date the
purchaser’s deed was filed for record.  Tex. Tax Code Ann. § 34.21(a).  If the property was not their residence
homestead, then the Gonzalezes had 180 days to redeem the property from the
date the purchaser’s deed was filed for record. 
Id. § 34.21(e).  It is undisputed that the Gonzalezes sought
redemption of the property outside of the 180-day period but within the
two-year period.

In order for him to establish that the 180-day deadline
applied, Razi bore the burden of proving that the property was not the
Gonzalezes’ residence homestead.  Id. § 34.21(e) (providing 180-day
deadline applies to property that was not the owner’s residence homestead).  Section 34.21 incorporates the definition of
“residence homestead” provided in section 11.13 of the Texas Tax Code.  Tex.
Tax Code Ann. § 11.13(j)(1) (Vernon 2008), § 34.21(g)(4).  Section 11.13 provides:

(j)      For
purposes of this section:

(1)     “Residence
homestead” means a structure (including a mobile home) or a separately secured
and occupied portion of a structure (together with the land, not to exceed 20
acres, and improvements used in the residential occupancy of the structure, if
the structure and the land and improvements have identical ownership) that:

(A)    is
owned by one or more individuals, either directly or through a beneficial
interest in a qualifying trust;

(B)     is
designed or adapted for human residence;

(C)     is
used as a residence; and

(D)    is
occupied as his principal residence by an owner or, for property owned through
a beneficial interest in a qualifying trust, by a trustor of the trust who
qualifies for the exemption.

. . .

(k)     A
qualified residential structure does not lose its character as a residence
homestead if a portion of the structure is rented to another or is used
primarily for other purposes that are incompatible with the owner’s residential
use of the structure . . . .

(l)      A
qualified residential structure does not lose its character as a residence
homestead when the owner who qualifies for the exemption temporarily stops
occupying it as a principal residence if that owner does not establish a
different principal residence and the absence is:

(1)     for
a period of less than two years and the owner intends to return and occupy the
structure as the owner’s principal residence . . . .

Id.
§ 11.13(j)–(l).  

The Gonzalezes on appeal focus on their testimony
regarding the issue of the residence homestead. 
The Gonzalezes testified that they had owned the property since 1993.  Jose Gonzalez testified that they had lived
there since 1993, while Esperanza Gonzalez testified that they had a water well
and septic tank installed in 1994 and they moved onto the property in
1995.  The Gonzalezes both testified that
they lived on the property continuously since 1993 or 1995 and that the
property was their primary residence.  Esperanza
Gonzalez testified that their younger children attended school in the area and
the address for the property was the address registered with the school.

The trial court, in its capacity as fact finder, however,
could have determined that the Gonzalezes were not credible and disregarded
their testimony.  See Golden Eagle Archery, Inc., 116 S.W.3d at 761.  This is a determination that an appellate
court cannot review.  Id. 
The only other evidence concerning the status of the property as a
residence homestead came from the testimony of Razi.  We turn, then, to this testimony to determine
whether there is sufficient evidence to support a finding that Razi met his
burden on this matter.

Razi testified that the property was not listed as a
homestead in the notice he received of the foreclosure sale.  He visited the property once before the foreclosure
sale and “[m]ore than five, six times” after the foreclosure sale.  Razi never saw the Gonzalezes on the property
during his visits.

There was a man, identified only as Mr. Hernandez, living
on the property in a trailer at the time of foreclosure.  Razi testified that Hernandez told him that
he ran an automobile repair shop on part of the property and that no one else
was living there other than him and his wife.

Razi also testified that the residence was “uninhabitable”
at the time of his visits, although he never actually entered the
residence.  He tried to look in the
windows but could not see very much. 
From his observations on the outside, Razi noted that the residence was “run
down,” the roof was leaking in places, and the outside stairs leading to the
second story were not safe to climb.

Although Razi testified that the Gonzalezes were not
occupying the property at the time of the foreclosure sale, this does not end the
inquiry.  Section 11.13 provides that a
qualified residential structure does not lose its character as a residence
homestead if the owner stops occupying the residence as a principal residence
for a period of less than two years as long as the owner intends to return to
the property as the principal residence and does not establish a different
principal residence during the absence.  Tex. Tax Code Ann. § 11.13(l)(1).  Whether the Gonzalezes were occupying the
property at the time of the sale or even whether the Gonzalezes could occupy the property at the time of
the sale is not dispositive of whether the property qualified as a residence
homestead.  Instead, Razi bore the burden
of showing that the Gonzalezes had not resided on the property for over two
years or had committed some other act that prevented or extinguished the establishment
of the residence homestead.

Although Razi testified that the Gonzalezes were not
present on the property at the time of sale and that the home was uninhabitable
at that time, he did not establish that this had been true for a period of over
two years prior to the sale.  Razi’s
testimony of what Hernandez told him does not meet the burden either.  Even though there was testimony that
Hernandez lived there, that he ran an automobile repair shop on part of the
property, and that no one else was living there other than him and his wife, Razi
did not testify about how long this had been true.[3]  Accordingly, there is no evidence establishing
that the Gonzalezes had not resided on the property for over two years.

On appeal, Razi argues that, because the home was
uninhabitable, it was not “designed or adapted for human residence,” a required
element for property to qualify as a residence homestead.  See id.
§ 11.13(j)(1)(B).  We disagree.  This requirement is disjunctive.  It was undisputed that the structure in
question was a residential home with a mobile home abutting it.  A residential home and a mobile home are
“designed for human residence.”  To hold
otherwise would mean that any property with a residential home that suffers a
natural disaster would automatically cause the owner to lose the residential
homestead protections.  We do not read
the statute so narrowly.  

We hold that, because Razi did not establish that the
Gonzalezes had not occupied the residence for a period of over two years or in
any other way establish that they had committed some other act that prevented
or extinguished the establishment of the residence homestead, Razi failed to
meet his burden of disproving the presumption that the property was the Gonzalezes’
residential homestead.  Accordingly, the
Gonzalezes had two years to seek redemption of their property and timely sought
redemption.

We sustain the Gonzalezes’ first issue.

C.              
Substantial Compliance with Redemption
Requirements

In their second issue, the Gonzalezes challenge the legal
and factual sufficiency of the evidence supporting the trial court’s
determination that the Gonzalezes did not comply with the requirements for
redemption.

Razi argues that the Gonzalezes did not comply with the
requirements for redemption because they did not pay the proper amount and the
affidavit that the Gonzalezes submitted to redeem their property was
insufficient.  In its judgment, however,
the trial court found only that the Gonzalezes did not comply with the requirements
for redemption because “they did not make the proper redemption payment within
the required time period.”  

A trial court’s findings “shall not be recited in a
judgment.”  Tex. R. Civ. P. 299a. 
Even so, “findings of fact recited in an order or judgment will be
accorded probative value so long as they are not in conflict with findings
recited in a separate document.”[4]  In re
Sigmar, 270 S.W.3d 289, 295 n.2 (Tex. App.—Waco 2008, orig. proceeding)
(citing In re U.P., 105 S.W.3d 222,
229 n.3 (Tex. App.—Houston [14th Dist.] 2003, pet. denied)).  When the trial court provides findings, they
form the basis of the judgment and that judgment may not be supported on appeal
by a ground of recovery or defense not included in the findings of fact.  Tex.
R. Civ. P. 299.  We have already
determined that the Gonzalezes sought redemption of the property within the
required time period.  Accordingly, we
consider on appeal only whether the Gonzalezes made the proper redemption
payment.  Id.  

Section 34.21 requires the party seeking to redeem
property to pay “the purchaser the amount the purchaser bid for the property,
the amount of the deed recording fee, and the amount paid by the purchaser as
taxes, penalties, interest, and costs on the property, plus a redemption premium
of 25 percent of the aggregate total if the property is redeemed during the
first year.”  Tex. Tax Code Ann. § 34.21(a).  “Costs” includes:

(A)    the
amount reasonably spent by the purchaser for maintaining, preserving, and
safekeeping the property, including the cost of:

(i)      property
insurance;

(ii)     repairs
or improvements required by a local ordinance or building code or by a lease of
the property in effect on the date of the sale;

(iii)    discharging
a lien imposed by a municipality to secure expenses incurred by the
municipality in remedying a health or safety hazard on the property;

(iv)    dues
or assessments for maintenance paid to a property owners’ association under a
recorded restrictive covenant to which the property is subject; and

(v)     impact
or standby fees imposed under the Local Government Code or Water Code and paid
to a political subdivision . . . .

Id.
§ 34.21(g)(2)(A).

It was undisputed at trial that Razi purchased the
property for $13,000 at the foreclosure sale. 
Razi also testified that he had to pay $544.01 in taxes owed to Aldine
Independent School District.  Razi also
removed a mobile home on the property—costing him $1,200—and evicted Hernandez
due to his failure to pay rent—costing him $240.  Razi did not testify to the amount of any
other costs or expenses.

The Gonzalezes were required to repay the amount paid at
the foreclosure sale.  Id. § 34.21(a).  They were also required to pay the taxes owed
that were paid by the purchaser.  Id. 
Nothing in the statute, however, obligated the Gonzalezes to reimburse
Razi for his costs incurred by choosing to remove a mobile home from the
property and to evict Hernandez.  Costs
are “the amount reasonably spent by the purchaser for maintaining, preserving,
and safekeeping the property.”  Id. § 34.21(g)(2).  All of the examples provided in the statute quoted
above are costs that are necessary for the maintenance,
preservation, or safekeeping of the property rather than simply improving
or altering the property.  See id. § 34.21(g)(2)(A).  Razi did not establish that removing the
mobile home or evicting Hernandez was necessary for the maintenance,
preservation, or safekeeping of the property.

Accordingly, based on Razi’s testimony and the statutory
requirements, the Gonzalezes were required to pay $13,000 plus $544.01 plus—because
Razi redeemed the property in the first year—25% of the aggregate total.  This equals $16,930.01.  The Gonzalezes paid $16,757.29, which is
98.98% of what they owed Razi.  We hold
that this was sufficient.  See Page v. Burk, 582 S.W.2d 512, 514
(Tex. Civ. App.—Dallas 1979, no writ) (holding payment of amount that was less
than 1% difference from amount owed substantially complied with redemption
statute).

We sustain the Gonzalezes’ second issue.

                                                                                                                                                                   
Conclusion

We reverse the trial court’s judgment and remand to the
trial court for rendition of a judgment declaring that Jose Pedro Gonzales and
Esperanza Gonzalez have redeemed their property, including any other
determinations necessary for such rendition that were presented at trial.

 

                                                                   Laura
Carter Higley

                                                                   Justice


 

Panel consists of Justices Jennings, Higley, and Brown.











[1]           Esperanza Gonzalez testified that they moved off the
property after they were notified by the police that the property had been sold
at foreclosure and that they had to leave. 

 





[2]           The 2009 amendments to the statute apply “to a redemption
of real property on or after the effective date of this Act [September 1,
2009], regardless of” when the property was sold.  Act of May 21, 2009, 81st Leg., R.S., ch.
374, §§ 2, 3, 2009 Tex. Gen. Laws 913, 914. 
All events concerning redemption of the property occurred in 2008.  Accordingly, the 2009 amendments do not apply
to the parties.  See id.  

 

            The
2009 amendments modified subsection (f) and added a subsection (f-1).  Id.
at § 1.  All other subsections
remain the same.  For the sake of
simplicity, we will cite to the prior section only when we rely on language
from the previous subsection (f).

 





[3]           Esperanza Gonzalez testified that Hernandez had moved onto
the property only two months prior to the foreclosure.  There was no testimony to the contrary.





[4]           The Gonzalezes filed a request for findings of fact and
conclusions of law, but none were ever filed by the trial court and the
Gonzalezes did not file a notice of past due findings of fact and conclusions
of law.  See Tex. R. Civ. P.
296 (allowing party to request court to state its findings of fact and
conclusions of law), 297 (giving deadline for court to file findings and,
absent timely filing, requiring requesting party to file notice of past due
findings of fact and conclusions of law).