**Opinion filed September 12, 2024**



In The

# Eleventh Court of Appeals

_____

## No. 11-22-00322-CV

_____

## ST. ANDREWS INVESTMENTS CO., LLC, Appellant

## V.

## THE ESTATE OF MANUEL TERCERO VALDEZ, DECEASED, BY AND THROUGH GUADALUPE VALDEZ, EXECUTRIX, Appellee

**On Appeal from the 441st District Court**
**Midland County, Texas**
**Trial Court Cause No. CV54888**

## M E M O R A N D U M   O P I N I O N

The Texas Tax Code includes a provision that allows a former property owner to redeem a residential homestead that was the subject of a foreclosure sale. TEX. TAX CODE ANN. § 34.21(a) (West Supp. 2023). To effectuate the redemption,

the former owner must reimburse the person who purchased the property at the tax sale for certain expenses that were incurred by the purchaser, together with a "redemption premium." *Id.*

In this case, we consider whether the trial court correctly calculated the redemption price that was awarded to Appellee. We also are asked to consider whether the trial court acted within its discretion when it determined that attorney's fees would not be awarded to either party. We modify and affirm.

*Factual and Procedural Background*

Prior to September 2017, the property at issue was owned by Raymond Sturgeon, Sr. Thereafter, the property was purchased by Manuel Tercero Valdez for $28,700 in a tax foreclosure sale that took place on September 5, 2017. Following the tax foreclosure sale, Sturgeon passed away, and his heirs transferred their rights in the property, including their redemption rights, to Appellant, St. Andrews Investments Co., LLC. St. Andrews then filed an affidavit and deposited the sum of $35,912.50 with the Tax Assessor-Collector of Midland County, seeking to redeem the property.

Manuel filed suit against St. Andrews, seeking a declaratory judgment that, among other things, St. Andrews had not obtained a valid statutory right of redemption, and that the attempted redemption by St. Andrews was ineffective as a matter of law. Manuel then filed a motion for summary judgment, arguing that St. Andrews could not redeem the property unless it held title to the property during the foreclosure process. The trial court granted the motion, and St. Andrews appealed.

2

The Fourteenth Court of Appeals[1] determined that "even though St. Andrews did not hold title to the Property on the date of the tax sale, it obtained a valid right of redemption from the heirs of the person who did." *St. Andrews Inv. Co., LLC v. Valdez*, No. 14-19-00781-CV, 2021 WL 330122, at *5 (Tex. App.—Houston [14th Dist.] Feb. 2, 2021, pet. denied) (mem. op.) (*St. Andrews I*); *see also, e.g.*, *Little v. Dennis*, 187 S.W.2d 76, 77, 79 (Tex. 1945) (petitioner who acquired interest in land after tax sale but before expiration of redemption period had "the right to redeem the land").[2] "Thus, Valdez, as the summary judgment movant, failed to establish conclusively that St. Andrews [was] not considered an 'owner.'" *St. Andrews I*, 2021 WL 330122, at *5.

Following a reversal and remand from the summary judgment, the case proceeded to trial. Manuel died prior to trial, and Manuel's wife, Guadalupe Valdez, appeared in his place as plaintiff in her capacity as the executrix of Manuel's estate. The trial resulted in a declaration that St. Andrews was the owner of the property and an award to Guadalupe as executrix of Manuel's estate for $68,405.69, the statutory redemption price as determined by the trial court. *See* TAX. § 34.21(a) (describing the expenses that may be included in statutory redemption price). St. Andrews has now appealed from the trial court's final judgment.

*The Redemption Price Award*

In its first issue, St. Andrews complains that the trial court improperly calculated the redemption price that was awarded to Guadalupe. St. Andrews does not specify whether it is challenging the legal or factual sufficiency of the

---

[1]St. Andrews's appeal from the summary judgment was transferred from this court to the Fourteenth Court of Appeals pursuant to Section 73.001 of the Texas Government Code. *See* TEX. GOV'T CODE ANN. § 73.001 (West Supp. 2023).

[2]As noted in *St. Andrews I*, "[i]n 2019, the legislature amended section 34.21 to prohibit the transferability of redemption rights." 2021 WL 330122 at *4 n.6. Because the transfer in this case occurred prior to the effective date of the amendment, it did not preclude this transfer. *Id.*

evidence in connection with either of these categories. However, construing the brief liberally, we will consider both legal and factual sufficiency. *See* TEX. R. APP. P. 38.9; *2900 Smith, Ltd. v. Constellation NewEnergy, Inc.*, 301 S.W.3d 741, 745 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (noting that briefs should be construed liberally and holding that the brief would therefore be recognized "as challenging both the legal and factual sufficiency of the evidence supporting the judgment").

A. *Standard of Review*

When parties challenge the legal sufficiency of the evidence supporting an adverse finding on which they did not have the burden of proof at trial, they must demonstrate that there is no evidence to support the adverse finding. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983). Under a legal sufficiency review, we consider all of the evidence in the light most favorable to the prevailing party, make every reasonable inference in that party's favor, and disregard contrary evidence unless a reasonable factfinder could not. *City of Keller*, 168 S.W.3d at 807, 822, 827. We cannot substitute our judgment for that of the factfinder if the evidence falls within this zone of reasonable disagreement. *Id.* at 822.

The evidence is legally insufficient to support a finding only if (1) the record discloses a complete absence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the only evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *Id.* at 810. "Anything more than a scintilla of evidence is legally sufficient to support the finding." *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998). "More than a scintilla of evidence exists when the evidence

4

would enable reasonable and fair-minded people to reach different conclusions." *Burbage v. Burbage*, 447 S.W.3d 249, 259 (Tex. 2014). "However, if the evidence is so weak that it only creates a mere surmise or suspicion of its existence, it is regarded as no evidence." *Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 156 (Tex. 2014).

If a party attacks the factual sufficiency of an adverse finding on an issue in which the other party had the burden of proof, the attacking party must demonstrate that there is insufficient evidence to support the adverse finding. *Croucher*, 660 S.W.2d at 58. In a factual-sufficiency challenge, we consider and weigh all of the evidence, both supporting and contradicting the finding. *See Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998). We may set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.* at 407. We may not substitute our own judgment for that of the factfinder or pass upon the credibility of witnesses. *Id.*

B. *The Redemption Price*

The Tax Code provides that the redemption price for property that is sold at a tax sale includes the following: (1) "the amount the purchaser bid for the property," (2) "the amount of the deed recording fee," and (3) "the amount paid by the purchaser as taxes, penalties, interest, and costs on the property." TAX § 34.21(a). Additionally, the person redeeming the property must pay "a redemption premium of 25 percent of the aggregate total" when "the property is redeemed during the first year of the redemption period." *Id.*

St. Andrews's complaints regarding the calculation of the redemption price are divided into two categories. First, St. Andrews argues that the reimbursements for tax payments that were awarded by the trial court were inflated. Second,

5

St. Andrews asserts that some of the "costs" that were included in the trial court's judgment are unsupported by the evidence.

*C. Taxes*

St. Andrews maintains that the trial court's judgment improperly included reimbursement to Guadalupe for payment of ad valorem taxes that were incurred for the tax years 2011 through 2015, totaling $3,314.82. Specifically, St. Andrews maintains that past-due taxes should have been satisfied at the time Manuel purchased the property pursuant to the requirements of the Tax Code. *See* TAX § 34.02 (describing the manner in which proceeds from a tax sale are allocated to various fees and expenses, including unpaid taxes). St. Andrews then argues that, because the then past-due taxes were satisfied out of the proceeds from the sale of the property, the trial court's award for payment of past-due taxes through the tax year 2015 would constitute a double-recovery. St. Andrews also argues that the excess recovery for payment of taxes was further compounded when the trial court added a redemption premium of 25% into the judgment, causing the judgment to be improperly inflated by a total of $4,143.53.

The record includes receipts from the Midland Central Appraisal District for taxes paid covering the years 2017 through 2020, but there are no similar receipts that cover the years 2011 through 2016. Victor Valdez, Manuel and Guadalupe's son, appeared at trial and testified that Manuel "ended up paying" taxes from 2011 to 2020. However, Victor did not specify whether those taxes were paid as a part of or were separate from the purchase price that Manuel had paid on the home at the tax sale. Under these circumstances, we conclude that the evidence is both factually and legally insufficient to support an award that reimburses Guadalupe for taxes that should have been satisfied out of the purchase price of the home. *See* TAX § 34.02.

6

D. *Other Costs*

The Tax Code provides that the redemption price may also include "costs," which constitute "the amount reasonably spent by the purchaser for maintaining, preserving, and safekeeping the property." TAX § 34.21(g)(2).

The record includes receipts for repairs to the property. The services that are reflected in these receipts include repairs to the air conditioning, the roof, and the flooring. They also reflect payment for exterior and interior painting. Manuel's estate sought to recover $17,872.46 based on the services that are reflected in the receipts.[3] St. Andrews argues that, for various reasons, the evidence is insufficient to establish the estate's claim for these costs.

### 1. *Timing of Repairs to Air Conditioning*

St. Andrews first complains that the estate cannot recover for repairs to the air conditioning system because the repairs were effectuated after St. Andrews deposited its redemption payment with the clerk in July 2018. St. Andrews argues that allowing a party to initiate repairs on the home after the redemption process has been initiated is unfair, because it opens the door for unscrupulous owners to incur additional repair costs in hopes of gaining a 25% windfall on its expenses at the time of turnover. *See* TAX § 34.21(a).

The redemption statute does not limit the period in which costs can be incurred, and we are obligated to apply its plain and unambiguous meaning. *See id.*; *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865 (Tex. 1999) ("If the meaning of the statutory language is unambiguous, we adopt, with few exceptions, the interpretation supported by the plain meaning of the provision's words and terms."). Furthermore, the party recovering the redemption price is

---

[3]Manuel's estate sought to recover only half of the cost of the roofing repairs, which totaled $10,200.

required to demonstrate that any costs are "reasonably spent," and we believe that such a limitation discourages owners from incurring superfluous repairs in an effort to take advantage of the 25% redemption premium. *See* TAX § 34.21(g)(2).

### 2. *Code Requirements*

St. Andrews also argues that the redemption statute only permits repairs that are necessary to satisfy code requirements, and that Manuel's estate has failed to establish that the repairs at issue were necessary to satisfy such requirements. The statute provides that "costs" includes "the amount reasonably spent by the purchaser for maintaining, preserving, and safekeeping the property, *including* the cost of . . . (ii) repairs or improvements required by a local ordinance or building code." *Id.* (emphasis added). The language of the statute does not *limit* the recoverable costs for repairs to those that are required by an applicable ordinance or code. It merely indicates that such repairs are included within the definition of "costs." As such, Manuel's estate was not obligated to prove that the repairs to the property were subject to code requirements.

### 3. *Necessity of Repairs and Other Upkeep*

St. Andrews also argues that it was not necessary to repair the air conditioning, roof, flooring, and plumbing for the purpose of "maintaining, preserving, [or] safekeeping the property." *See id.*

"Maintain" means "to keep in existence or continuance; preserve; retain." *Ladner v. Prop. Owners Ass'n of Mountain Lakes Ranch, Inc.*, No. 07-21-00210-CV, 2023 WL 424846, at *4 (Tex. App.—Amarillo Jan. 26, 2023, no pet.) (mem. op.) (quoting *Owasso Indep. Sch. Dist. No. I-011 v. Falvo*, 534 U.S. 426, 433 (2002)). It can further be defined as "to keep in an existing state (as of repair, efficiency, or validity): preserve from failure or decline." *Id.* (quoting MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2014)).

Maintaining a property is different from *improving* it. Costs for maintaining a property are within the scope of the redemption statute, while costs for improving a property are not. *Gonzalez v. Razi*, 338 S.W.3d 167, 176 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) ("All of the examples provided in the statute quoted above are costs that are necessary for the *maintenance, preservation, or safekeeping* of the property rather than simply improving or altering the property.").

The property at issue is a residence that was designed to provide air conditioning, roofing, flooring, and plumbing for its inhabitants. In that regard, Victor testified that the air conditioner was not working, that the roof and plumbing were leaking, and that there were several holes in the floor. Under such circumstances, the trial court could properly conclude that the repairs at issue were necessary to "maintain" the property (i.e., to restore the property to the condition in which it had long functioned and for which it was designed). *See Ladner*, 2023 WL 424846, at *4.

We likewise reject St. Andrews's argument that the costs of removing debris from the property and inspecting the electrical system were unnecessary for "maintaining, preserving, [or] safekeeping" the property. Tax § 34.21(g)(2). Regular cleaning and inspection is also necessary to maintain and preserve a residence in a functioning and habitable state, particularly when inspection is needed for safety purposes. *See Ladner*, 2023 WL 424846, at *4.

### 4. *Painting*

St. Andrews also complains that Manuel's estate improperly sought to recover reimbursements that it paid to a potential buyer of the property for painting. There was testimony from Victor that the painting was necessary to avoid damage to the home that would result from exposed wood. As such, the trial court could have

properly concluded that painting the home was necessary for its maintenance and preservation. *Id.*; *see also* TAX § 34.21(g)(2).

We are likewise unpersuaded by St. Andrews's argument that, because Manuel did not pay for the painting services directly, he cannot include the costs for painting the house in his recovery. Victor testified that Manuel reimbursed a potential purchaser of the home based on receipts that reflected services that were rendered in painting the home. Regardless of whether the person providing the services was paid directly or indirectly, the reimbursement was "spent . . . for maintaining [and] preserving" the property. *See* TAX § 34.21(g)(2).

We conclude that the evidence is both factually and legally sufficient to support the estate's claims for reimbursement of various expenses relating to the maintenance and upkeep of the home, and that the trial court did not err in awarding such expenses.

E. *Disposition*

When a bench trial results in a monetary judgment that includes several elements of damages, the best practice is to request findings of fact and conclusions of law that specify the amount awarded for each element. *See Tagle v. Galvan*, 155 S.W.3d 510, 516 (Tex. App.—San Antonio 2004, no pet.). However, no such findings were requested in this case. Nevertheless, the trial court's judgment described its allocation of the costs that Guadalupe was entitled to recover— $17,872.46—which is the total amount of costs sought by the estate. In fact, the trial court determined the gross redemption amount owed to Guadalupe to be the full sum sought by the estate—$68,405.69.

Although a trial court errs in including findings of fact in its judgment, findings of fact in a judgment are accorded probative value "so long as they are not in conflict with findings recited in a separate document." *Gonzalez*, 338 S.W.3d at

175 (quoting *In re Sigmar*, 270 S.W.3d 289, 295 n.2 (Tex. App.—Waco 2008, orig. proceeding)); *see James J. Flanagan Shipping Corp. v. Del Monte Fresh Produce N.A., Inc.*, 403 S.W.3d 360, 364 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (holding that although "trial court erred by reciting its findings of fact in the judgment," the record contained no other findings of fact with which the trial court's findings could conflict and, therefore, trial court's findings were accorded probative value).

We have rejected St. Andrews's arguments that the costs for maintenance and upkeep of the house sought by the estate were improper under the redemption statute. However, we conclude that the award incorrectly includes reimbursement for tax payments that should have been satisfied out of the purchase price of the home at the tax sale. As such, there is no evidence to support a portion of the taxes sought by Guadalupe. Accordingly, St. Andrews's first issue is sustained in part and overruled in part. Because we find no evidence to support the portion of the taxes awarded to Guadalupe, we modify the judgment to delete $4,143.53 from the gross redemption amount. *See, e.g.*, *Superior Derrick Servs., Inc. v. Anderson*, 831 S.W.2d 868, 870 (Tex. App.—Houston [14th Dist.] 1992, writ denied); *see also In re C.L.*, No. 05-14-01520-CV, 2015 WL 682159, at *2 (Tex. App.—Dallas Feb. 18, 2015, no pet.) (mem. op.) (noting the court has the authority to modify a judgment when it has the necessary information to do so); *see also* TEX. R. APP. P. 43.2(b).

### Attorney's Fees

In its second issue, St. Andrews complains that the trial court erred when it failed to award attorney's fees to St. Andrews. St. Andrews asserts that the trial court should have awarded it $30,900 in attorney's fees and it asks for us to render judgment in its favor in this amount. Guadalupe responds that "[i]t cannot be an abuse of discretion for the [trial] [c]ourt, after considering all the evidence . . . to

11

refuse the award of attorney's fees to either party or to both parties" because, under Section 37.009 of the Texas Civil Practice and Remedies Code, the law does not require the trial court to award any party attorney's fees.

We note that, in general, the Declaratory Judgment Act "affords the trial court a measure of discretion in deciding whether to award attorney fees or not." *Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998). In this regard, a trial court "may award costs and reasonable attorney's fees as are equitable and just" in a declaratory judgment proceeding. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (West 2020). "The grant or denial of attorneys' fees in a declaratory judgment action lies within the discretion of the trial court, and its judgment will not be reversed on appeal absent a clear showing of abuse of discretion." *Hartsell v. Town of Talty*, 130 S.W.3d 325, 329 (Tex. App.—Dallas 2004, pet. denied). "A trial court may, in its discretion, award attorneys' fees to the nonprevailing party in a declaratory judgment action." *Id.*

For its claim for attorney's fees, St. Andrews relies in large part on the argument that it was required to litigate and appeal the original judgment against an improper legal argument made by Manuel's estate. St. Andrews asserts that it should be awarded its attorney's fees "[a]s a matter of fairness in light of all the circumstances." However, the record does not establish that the trial court abused its discretion by denying St. Andrews's request for attorney's fees. Furthermore, St. Andrews's success in this appeal is limited to only a reversal of a portion of the past ad valorem taxes. As such, we are not substantially modifying the trial court's judgment to the extent that a remand on the issue of attorney's fees is necessary for the trial court's reconsideration in light of our opinion. *See Collin Cnty. v. City of McKinney*, 553 S.W.3d 79, 87 (Tex. App.—Dallas 2018, no pet.). We overrule St. Andrews's second issue.

*This Court's Ruling*

We modify the trial court's judgment to reduce the gross amount owed by St. Andrews to Guadalupe to redeem the property from $68,405.69 to $64,262.16. As modified, we affirm the judgment of the trial court.


JOHN M. BAILEY
CHIEF JUSTICE


September 12, 2024

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.